IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRUCE W. KOENIG, #288937 *
Plaintiff,
v. * CIVIL ACTION NO. JFM-13-3082

STATE OF MARYLAND, *et al*. *
Defendants.
*****

MEMORANDUM

Procedural History

This complaint for injunctive relief and damages, alleges that defendants failed to accommodate plaintiff's hearing and mobility disabilities while housed at the North Branch Correctional Institution ("NBCI"). Plaintiff claims that he was not provided special accommodations for his disabilities affecting his day-to-day prison activities.[1] He alleges violations under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, and the Rehabilitation Act of 1973 ("RHA"). ECF No. 1.

Defendants have filed a motion to dismiss or, in the alternative, motion for summary judgment. ECF No. 19. Although afforded several extensions of time, plaintiff has not filed a response.[2] The case is ready for consideration and defendants' motion, treated as a motion for

---

[1] Plaintiff complains that he has been discriminated against due to his disability (inability to ambulate) in daily activities involving prison recreation and job/inmate medical and mental health assignments. He complains that he has been denied two chairs in his cell which relieves him of his back pain. ECF No. 1. Plaintiff further alleges that on three different occasions while assigned to NBCI segregation, he was not permitted to use his cane while in his prison cell or for outdoor recreation. He also claims that during the 2013 NBCI lockdown he was required to be handcuffed behind his back during out-of-cell activities, thus eliminating his ability to use his cane and resulting in the denial of showers during the lockdown. In addition, plaintiff complains that he has been discriminated against due to his hearing disability as he was not provided "real-time transcription" of disciplinary hearings. *Id*.

[2] Defendant's motion for summary judgment was filed on June 11, 2014. Plaintiff was granted six separate extensions and was to file an opposition by January 27, 2015. Plaintiff has been

summary judgment, may be determined without oral hearing. *See* Local Rule 105.6. (D. Md. 2014).

Standard of Review

Because matters outside the pleadings will be considered, defendants' motion shall be treated as a motion for summary judgment. Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

The "party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to ... the nonmovant, and draw all reasonable inferences in [his] favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526

provided over seven months to file an opposition and has not filed a response.

(internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

In *Anderson*, 477 U.S. at 249, the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp.*, 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

<u>Analysis</u>

Nurse Kristi Cortez, employed by Wexford Health Sources, Inc. at NBCI, affirms that plaintiff is a sixty-five year old male under chronic care supervision with a medical history significant for hyperlipidemia, dermatitis, depressive disorder, asthma, hypertension, and Meniere's Disease.[3] Cortez maintains that she observed plaintiff ambulating in his cell without a

[3] Meniere's disease is a disorder of the inner ear that causes spontaneous episodes of vertigo, a sensation of a spinning motion, along with fluctuating hearing loss, ringing in the ear (tinnitus), and sometimes a feeling of fullness or pressure in the ear. In many cases, Meniere's disease affects only

cane. Further, she affirms and although plaintiff claimed that he had difficulty hearing medical personnel, she observed him responding to correctional officers from a distance. ECF No. 19, Ex. 1 at Cortez Aff. Cortez further insists that in November of 2013, plaintiff passed an audiometry examination showing that his hearing was within normal limits in both his ears. She maintains that he is able to perform normal activities of daily living and has been provided a cane to assist his ambulation. *Id*.

Defendants claim that plaintiff was assigned to NBCI from February 27, 2008 to January 15, 2014, when he was transferred to the Western Correctional Institution. *Id*., Ex. 2 at Durst Decl. While housed at NBCI and when not on segregation status plaintiff was assigned to programming; sanitation, dietary, and special utility work details; and was a library aide for a three-week period of time. *Id*. Defendants additionally claim that plaintiff was not denied the ability to participate in his Inmate Grievance Office ("IGO") hearings and a real-time transcriptionist was provided for him on April of 2010. In October of 2011, he was able to represent himself at an IGO hearing without the assistance of a transcriptionist. *Id*. They further assert that when plaintiff appeared before Adjustment Hearing Officer ("AHO") Maddox in 2012, special arrangements were made to conduct an in-person hearing. At that time, AHO Maddox noted that plaintiff "responds well to questions and does not seem to have any hesitation or difficulty interacting with persons in person." *Id*., Ex. 3 at Wedlock Decl.; Ex. 4 at pg. 16.

Defendants allege that while housed in NBCI Housing Unit #1, no inmates were allowed to have chairs in their cells, because chairs were being disassembled or otherwise fashioned into weapons. *Id*., Ex. 5 at Harbaugh Decl. They further assert that no inmates were permitted to maintain canes within their cells in Housing Unit #1 due to security and safety concerns.

---

one ear. http://www.mayoclinic.org/diseases-conditions/menieres-disease/basics/definition/con-20028251.

Defendants claim that a cane was maintained in the housing unit's medical department for use by inmates, such as plaintiff, when exiting the cell for showers, recreation, or for other purposes. ECF No. 19, Ex. 5 at Harbaugh Decl.

Defendants seek dismissal of the complaint for the failure to exhaust administrative remedies. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Proper exhaustion of administrative remedies demands compliance with an agency's deadlines and other critical procedural rules because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 126 S.Ct. 2378, 2385-86 (2006). Exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendant(s). *See Jones v. Bock*, 127 S.Ct. 910, 919-22 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The record shows that plaintiff filed numerous Administrative Remedy Procedure ("ARP") grievances while at NBCI, but did not file any ARPs concerning the confiscation of his cane in October of 2011, March of 2012, and July of 2012. He did, however, file an ARP concerning his two medical chairs and his alleged inability to use his cane and his request to be cuffed in the front. ECF No. 19, Ex. 6 at Durst Decl. & attached ARP records. An investigation

into the latter ARP determined that plaintiff had a medical order for a cane, but that the medical order for cuffing had expired in August of 2013, and the medical department had declined to provide plaintiff an indefinite cuffing order. ECF No. 19, Ex. 6 at Durst Decl. & attached ARP records. Defendants do not discuss whether these ARPs were fully exhausted to the IGO and the court finds that defendants have provided inadequate and incomplete records in support of their non-exhaustion claim.

Defendants further claim that plaintiff's § 1983 complaint is subject to dismissal as he has failed to demonstrate an Eighth Amendment deprivation regarding the conditions of his confinement or a showing of deliberate indifference to his medical needs. They state, and it is not controverted, that the failure to provide him two chairs in his cell or to cuff him in the front were not the subject of ongoing medical orders or necessity. Indeed any medical orders recommending such action had expired and, given the security and safety policies enacted by administrators during the NBCI lockdown, plaintiff has failed to demonstrate defendants' deliberate indifference and malice required by the Eighth Amendment.

Title II of the ADA, 42 U.S.C. § 12131, *et seq.*, prohibits qualified individuals with disabilities from being excluded from participation in or being denied the benefits of the services, programs or activities of a public entity. To make out a prima facie case under the ADA, Plaintiff must show that: (1) he is a person with a disability as defined by statute; (2) he is otherwise qualified for the benefit in question; (3) he was excluded from the benefit due to discrimination based upon disability; and (4) the entity that provides the benefits is a public entity. *See* 42 U.S.C. § 12132; *Doe v. University of Maryland Medical System*, 50 F.3d 1261, 1265 (4th Cir. 1995); *Hallett v. New York*, 109 F.Supp.2d 190, 198 (S.D. N.Y. 2000). To establish a violation of the RA, plaintiff must prove he: (1) is a qualified individual with a

disability; (2) was denied the benefits of a program or activity of a public entity which receives federal funds; and (3) was excluded from same due to discrimination solely on account of the disability. *See* 29 U.S.C. § 794(a); *Doe*, 50 F.3d at 1265; *Bane v. Virginia Dep't of Corrections*, 267 F.Supp.2d 514, 520 (W.D. Va. 2003). Consequently, both the ADA and RA require that plaintiff show wrongful discrimination based upon his disability. Not only has plaintiff failed to establish that he is a qualified individual with a disability, but he has failed to prove violations of the ADA and RA as the evidence here does not support a finding that he suffered wrongful discrimination due to his disability.[4]

Finally, the ADA defines "public entity" in relevant part as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." *See* 42 U.S.C. § 12131(1)(A)-(B). The term "public entity," "as it is defined within the statute, does not include individuals." *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999); *see also* 42 U.S.C. § 12131(1). "In suits under Title II of the ADA...the proper defendant usually is an organization rather than a natural person....Thus, as a rule, there is no personal liability under Title II." *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000); *accord Miller v. King*, 384 F.3d 1248, 1276-77 (11th Cir. 2004). Individual liability is precluded under ADA Title II.

The RA provides disabled individuals redress for discrimination by a "public entity" which receives federal funds. Consequently, it would also appear that individual liability is not contemplated under § 504 of the RA. *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999);

---

[4] Inasmuch as Title II of the ADA is modeled on § 504 of the Rehabilitation Act, "decisional law" is used "interchangeably." *See Kiman v. New Hampshire Dep't of Corrections*, 451 F.3d 274, 285 n.10 (1st Cir. 2006).

*Dunion v. Thomas*, 457 F.Supp.2d 119 (D. Conn. 2006); *Calloway v. Boro of Glassboro Dep't of Police*, 89 F.Supp.2d 543, 557 (D. N.J. 2000).

Conclusion

Having found no genuine dispute of material fact justifying a trial on the merits in this case, the court shall grant defendants' motion for summary judgment by separate order.

Date: February 19, 2015

/s/
J. Frederick Motz
United States District Judge